UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM HOLMES,

                              Plaintiff,

        -v-

CALIBER HOME LOANS, INC., EDWARD C.
KLIEN, ESQ., COHN & ROTH, LESLIE A. BAUM,
THEODORE SCHROEDER, JAMES V. BRANDS,
LARRY SPANGLER, JOHN/JANE DOES, and
NEW YORK STATE UNIFIED COURT SYSTEM,

                              Defendants.

No. 16-CV-3344 (KMK)

OPINION & ORDER

Appearances:

William Holmes
Wappingers Falls, NY
*Pro Se Plaintiff*

Joseph N. Froehlich, Esq.
Locke Lorde LLP
New York, NY
*Counsel for Defendant Caliber Home Loans, Inc.*

Michael J. Sweeney, Esq.
Law Offices of Michael J. Sweeney, PC
Yonkers, NY
*Counsel for Defendants Edward C. Klein and Cohn & Roth*

Michael J. Siudzinski, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants James V. Brands and New York State Unified Court System*

KENNETH M. KARAS, District Judge:

        Plaintiff William Holmes ("Plaintiff"), proceeding pro se, brings this Action against

Caliber Home Loans, Inc. ("Caliber Home"), Edward C. Klein, Esq. ("Klein"), Cohn & Roth,

Leslie A. Baum ("Baum"), Theodore Schroeder ("Schroeder"), James V. Brands ("Justice Brands"), Larry Spangler ("Spangler"), John/Jane Does, and the New York State Unified Court System (collectively, "Defendants"), alleging that Defendants violated New York General Business Law § 349, the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and 42 U.S.C. §§ 1982, 1985, and 1986 during the course of a foreclosure proceeding initiated in New York State Supreme Court.[1]  Caliber Home, Klein, Cohn & Roth, Justice Brands, and the New York State Unified Court System (collectively, "Moving Defendants") have filed Motions To Dismiss Plaintiff's Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(5), and 12(b)(6) (the "Motions").[2]  For the reasons to follow, the Moving Defendants' Motions are granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and documents of which the Court can take judicial notice, and are taken as true for the purpose of resolving the Motions.

On February 25, 2015, Defendant Caliber Home commenced a mortgage foreclosure action in New York State Supreme Court against Plaintiff, Rayna Holmes, and the New York State Department of Taxation and Finance.  (*See* Decl. of Michael J. Sweeney, Esq., in Supp. of

---

[1] The Court notes that Plaintiff misspelled Klein's name in the caption of the Amended Complaint.  The Court will use the proper spelling throughout the course of this Opinion & Order.

[2] The Court has already dismissed the claims asserted against Baum without prejudice. (*See* Order (Dkt. No. 60).)

Mot. To Dismiss ("Sweeney Decl.") Ex. B ("Foreclosure Compl.") (Dkt. No. 46).)[3]  Caliber
Home sought to foreclose on real property located at 7 Brian Road in Wappingers Falls, New
York (the "Subject Property").  (Foreclosure Compl. ¶ 5.)  The complaint alleged that Plaintiff
and Rayna Holmes owed over $250,000 on a note and mortgage secured by the Subject Property.
(*Id.* ¶ 15.)  The case was assigned to Justice Brands.  (*See* Sweeney Decl. Ex. C, at 1.)
Defendant Klein of the law firm Cohn & Roth represented Caliber Home in the state-court
proceedings.  (*See id.* at 3.)

Plaintiff moved to dismiss the case, but Justice Brands denied Plaintiff's motion on May
21, 2015.  (*See id.* at 2.)  Plaintiff next filed an application entitled "Notice/Affidavit Nunc Pro
Tunc," alleging that the case had been settled because Plaintiff and Rayna Holmes satisfied the
outstanding debt.  (*Id.* (internal quotation marks omitted).)  On June 25, 2015, Justice Brands
denied Plaintiff's application.  (*See id.*)

After the court denied Plaintiff's applications, Caliber Home moved for an order of
reference.  (*See* Sweeney Decl. Ex. E.)  On September 1, 2015, Justice Brands granted Caliber
Home's motion and referred the matter to Defendant Baum.  (*Id.*)  Plaintiff then filed a second
"Affidavit Nunc Pro Tunc," in which he argued that the case should be dismissed because the
outstanding debt had been paid.  (*See* Decl. of Joseph N. Froehlich, Esq., in Supp. of Mot. To
Dismiss ("Froehlich Decl.") Ex. C (Dkt. No. 43) (internal quotation marks omitted).)  On
December 3, 2015, Justice Brands denied Plaintiff's application.  (*Id.*)

---

[3] The Court may take judicial notice of the filings made in the state-court foreclosure
proceedings. *See Cabrera v. Schafer*, 178 F. Supp. 3d 69, 72–73 (E.D.N.Y. 2016) (noting that a
court may take judicial notice of "documents filed in other courts" but only to "establish the fact
of such litigation and related filings and not for the truth of the matters asserted in the other
litigation" (internal quotation marks omitted)).

On December 31, 2015, Baum issued a report, finding that there was an outstanding balance on the note of $304,253 and recommending that the Subject Property be sold to satisfy the debt.  (*See* Sweeney Decl. Ex. F.)  On March 1, 2016, Justice Brands ratified Baum's report and entered a Judgment of Foreclosure and Sale, directing that the Subject Property be sold at a public auction.  (*See* Sweeney Decl. Ex. G.)  The Subject Property was auctioned off on May 5, 2016.  (*See* Sweeney Decl. Ex. H.)

Plaintiff alleges that Defendants joined with each other to "assiduously and unlawfully AUCTION [P]laintiff's private property with the intention to unlawfully enrich themselves and each other."  (Am. Compl. ¶ 11 (Dkt. No. 16) (emphasis omitted).)  As a part of this scheme, Defendants allegedly retained a tender payment Plaintiff made to settle the state-court proceedings.  Plaintiff alleges that after Defendants accepted the tender, Defendants continued the "malicious foreclosure process," (*id.* ¶ 10), and committed mail and wire fraud by mailing and emailing fraudulent documents in connection with the foreclosure action, (*id.* ¶ 20).  Plaintiff clarifies, however, that he "does not intend and neither is he implying in any manner or fashion that he is asking this Court to review the conclusions of any other STATE court found in NEW YORK STATE regarding the causes of action herein."  (*Id.* ¶ 13.)  Plaintiff seeks a declaration that he is the rightful owner of the property and $100 million in damages.

B.  Procedural Background

Plaintiff initiated this Action by filing a Complaint on May 5, 2016.  (Dkt. No. 1.)  On May 12, 2016, the Court issued an Order To Show Cause, directing Plaintiff to explain why the Action should not be dismissed for lack of subject matter jurisdiction or to file an amended pleading containing allegations that established subject matter jurisdiction.  (Dkt. No. 4.)  On June 8, 2016, Plaintiff filed the Amended Complaint.  (Dkt. No. 16.)  Pursuant to a memo

endorsement, Caliber Home, Justice Brands, and the New York State Unified Court System filed their Motions on September 1, 2016. (Dkt. Nos. 36–44.) Pursuant to a Motion Scheduling Order, Klein and Cohn & Roth filed their Motion on September 14, 2016. (Dkt. Nos. 45–47.) Plaintiff filed a response to Caliber Home's Motion on September 15, 2016. (Dkt. No. 51.) Caliber Home filed a reply on October 14, 2016. (Dkt. No. 52.) The other Moving Defendants elected to forgo a reply, as Plaintiff never responded to their respective Motions. (Dkt. Nos. 53, 57.)

## II. Discussion

Moving Defendants raise a series of arguments in support of their Motions. All of the Moving Defendants argue that Plaintiff has failed to state a claim, and that even if Plaintiff has stated a claim, the claims are barred by the *Rooker-Feldman* doctrine. Relatedly, Caliber Home asserts that Plaintiff's claims are barred by collateral estoppel, and Klein and Cohn & Roth argue that Plaintiff's claims are barred by res judicata. Justice Brands and the New York State Unified Court System (the "State Defendants") argue that Plaintiff's claims also are barred by the Eleventh Amendment, and Justice Brands additionally asserts that he is entitled to absolute immunity because he was serving as a judge in the underlying foreclosure proceeding. Finally, Caliber Home, Klein, and Cohn & Roth argue that Plaintiff's claims must be dismissed because Plaintiff did not properly effectuate service of process. The Court will address each of these arguments in turn.

### A. Standard of Review

#### 1. Rules 12(b)(1) & 12(b)(6)

"The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are 'substantively identical.'"

*Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003)); *see also Neroni v. Coccoma*, No. 13-CV-1340, 2014 WL 2532482, at *4 (N.D.N.Y. June 5, 2014) (same), *aff'd*, 591 F. App'x 28 (2d Cir. 2015). "In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted); *see also Seemann v. U.S. Postal Serv.*, No. 11-CV-206, 2012 WL 1999847, at *1 (D. Vt. June 4, 2012) (same). However, "[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6)." *Gonzalez*, 2014 WL 2475893, at *2; *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). This allocation of the burden of proof is "[t]he only substantive difference" between the standards of review under these two rules. *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009).

<u>a. Rule 12(b)(1)</u>

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Bryant v. Steele*, 25 F. Supp. 3d 233, 241 (E.D.N.Y. 2014) (internal quotation marks omitted). "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject

matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration and internal quotation marks omitted); *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.").

### b. Rule 12(b)(6)

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his [or her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation, alteration, and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Instead, a complaint's "[f]actual allegations

must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the

plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her] complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015). In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his [or her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

## 2. Rule 12(b)(5)

"A defendant may move to dismiss under Rule 12(b)(5) for insufficient service of process." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010). "In deciding a Rule 12(b)(5) motion, a [c]ourt must look to Rule 4, which governs the content, issuance, and service of a summons," *id.*, and may consider "matters outside the complaint to determine whether it has jurisdiction," *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 320 (S.D.N.Y. 2016). "Once a defendant challenges the sufficiency of service of process, the burden of proof is on the plaintiff to show the adequacy of service." *George v. Prof'l Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 432 (S.D.N.Y. 2016) (internal quotation marks omitted).

## B. Analysis

### 1. The Eleventh Amendment & Judicial Immunity

The State Defendants argue that the Court need not address the merits of Plaintiff's claims because they are entitled to Eleventh Amendment immunity and Justice Brands is additionally entitled to judicial immunity. (*See* State Defs.' Mem. of Law in Supp. of Mot. To Dismiss ("State Defs.' Mem.") 5–8 (Dkt. No. 37).)

#### a. Eleventh Amendment Immunity

"[A]s a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law." *Harrison v. New York*, 95 F. Supp. 3d 293, 314 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also* U.S. Const. amend. XI.[4] "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch.*

---

[4] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

*Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (internal quotation marks omitted). Thus, under the doctrine of sovereign immunity, an individual may not sue a state, its agencies, or its officials in federal court, absent that state's consent or an express statutory waiver of immunity. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999); *see also McGinty v. New York*, 251 F.3d 84, 91 (2d Cir. 2001) ("[T]here are two recognized exceptions to the [Eleventh Amendment] bar: when Congress authorizes such a suit through enforcement of § 5 of the Fourteenth Amendment, and where a state consents to being sued."). The party seeking immunity bears the burden of demonstrating that it is an arm of the state. *See Gorton v. Gettel*, 554 F.3d 60, 62 (2d Cir. 2009) ("The burden is on the party seeking immunity to demonstrate that it is an arm of the state."); *see also Woods*, 466 F.3d at 237 (holding that "the governmental entity invoking the Eleventh Amendment bears the burden of demonstrating that it qualifies as an arm of the state entitled to share in its immunity").

It is well-settled that New York State has not consented to being sued in federal court. *See Bryant v. N.Y. State Dep't of Corr. Servs. Albany*, 146 F. Supp. 2d 422, 425 (S.D.N.Y. 2001) (noting it is "beyond dispute" that New York and its agencies have not consented to being sued in federal court (internal quotation marks omitted)). Nor do any of the statutes upon which Plaintiff relied in instituting this Action abrogate New York's sovereign immunity. *See Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that [the plaintiff's] [§§] 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the 11th Amendment."); *Moore v. City of New York*, No. 08-CV-2449, 2011 WL 795103, at *7 n.3 (E.D.N.Y. Feb. 28, 2011) ("Congress did not abrogate Eleventh Amendment protection when it passed the RICO statute, and New York State has not waived its sovereign immunity either from RICO claims." (citation omitted)); *Jones v. Nat'l*

*Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 467 (S.D.N.Y. 2006) ("Sections 1981 to 1986 of Title 42 . . . do not constitute a congressional waiver of state immunity."), *aff'd*, 266 F. App'x 31 (2d Cir. 2008). Thus, Justice Brands and the New York State Unified Court System are immune from suit so long as they are state agents or instrumentalities.

The New York State Unified Court System is "unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 368 (2d Cir. 2009) (citation omitted); *see also O'Dette v. N.Y. State Unified Court Sys.*, No. 12-CV-2680, 2013 WL 1623597, at *4 (E.D.N.Y. Apr. 15, 2013) ("An arm of the State, such as the New York State United Court System, is immune [under the Eleventh Amendment].").  Accordingly, all of the claims asserted against the New York State Unified Court System are dismissed with prejudice, as better pleading cannot render it amendable to suit.

"Claims against state employees in their official capacity are deemed claims against the state itself, and are likewise barred by the Eleventh Amendment." *Adbur-Raheem v. Selsky*, 598 F. Supp. 2d 367, 369 (W.D.N.Y. 2009) (internal quotation marks omitted).  A plaintiff may, however, "avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (internal quotation marks omitted).  Accordingly, Plaintiff's claims are barred against Justice Brands to the extent that he seeks monetary damages, *see Myers v. Cholakis*, No. 08-CV-126, 2008 WL 5147042, at *2 (N.D.N.Y. Dec. 5, 2008) ("Thus, to the extent that [the plaintiff] purports to sue Judge Cholakis in her official capacity as a New York State Judge, such claims are barred by the Eleventh Amendment."); *Sassower v. Mangano*, 927 F. Supp. 113, 121 (S.D.N.Y. 1996) (holding

that claims asserted against the presiding and associate justices of the New York State Appellate Division, Second Department, were barred by the Eleventh Amendment), *aff'd*, 122 F.3d 1057 (2d Cir. 1997), but they are not barred to the extent that Plaintiff seeks prospective equitable relief, *see Collins v. Lippman*, No. 04-CV-3215, 2005 WL 1367295, at *2 (E.D.N.Y. June 8, 2005) ("[T]he Eleventh Amendment does not prohibit actions for injunctive or declaratory relief against state officials."). Here, Plaintiff seeks a declaration that Defendants do not retain any interest in the Subject Property. (*See* Am. Compl. ¶ 36.) Although it is unclear to what extent Justice Brands possesses any interest in the Subject Property, in an abundance of caution, the Court will not dismiss on Eleventh Amendment immunity grounds Plaintiff's claims to the extent they seek declaratory relief against Justice Brands.

### b. Judicial Immunity

"Since the seventeenth century, the common law has immunized judges from damage claims arising out of their judicial acts." *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997). "The cloak of immunity is not pierced by allegations of bad faith or malice, even though unfairness and injustice to a litigant may result on occasion," *id.* (citation and internal quotation marks omitted), and can be overcome "only if the court is alleged to have taken non-judicial actions or if the judicial actions taken were in the complete absence of all jurisdiction," *Radford v. Crimi*, No. 16-CV-6441, 2017 WL 1106932, at *1 (W.D.N.Y. Mar. 23, 2017) (internal quotation marks omitted); *see also Huminski v. Corsones*, 396 F.3d 53, 75 (2d Cir. 2005) ("[I]f the relevant action is judicial in nature, the judge is immune so long as it was not taken in the complete absence of jurisdiction."). Here, Judge Brands presided over the state-court foreclosure action as a Justice of the Supreme Court, Dutchess County. All of the actions he allegedly took in that capacity were judicial. Accordingly, Plaintiff's claims for damages against Justice Brands

are dismissed with prejudice. *See Sage-El v. Tully*, No. 15-CV-5606, 2015 WL 6455242, at *2 (E.D.N.Y. Oct. 26, 2015) ("To the extent [the] plaintiff seeks to bring claims against the judges involved in his state court proceedings his claims must be dismissed, as judges have absolute immunity for their judicial acts performed in their judicial capacities.").

Like the Eleventh Amendment, however, the doctrine of absolute judicial immunity "does not bar claims for prospective declaratory or injunctive relief." *MacPherson v. Town of Southampton*, 664 F. Supp. 2d 203, 211 (E.D.N.Y. 2009). Therefore, for the same reasons stated above, the Court declines to dismiss on judicial immunity grounds Plaintiff's claims against Justice Brands to the extent Plaintiff seeks a declaration that Justice Brands does not retain any interest in the Subject Property.

### 2. The *Rooker-Feldman* Doctrine

Moving Defendants argue that the Court lacks subject matter jurisdiction over Plaintiff's claims because they are all barred by the *Rooker-Feldman* doctrine. (*See* State Defs.' Mem. 8–9); Caliber Home Mem. of Law in Supp. of Mot. To Dismiss ("Caliber Home Mem.") 5–7 (Dkt. No. 42); Klein and Cohn & Roth Mem. of Law in Supp. of Mot. To Dismiss ("Klein and Cohn & Roth Mem.") 5–6 (Dkt. No. 47).) "Under the *Rooker-Feldman* doctrine, federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y. 2006) (internal quotation marks omitted). In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005), the Supreme Court emphasized that the doctrine is "narrow" and only applies to federal lawsuits brought by "state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. After *Exxon Mobil*, the Second Circuit reexamined *Rooker-*

*Feldman* and laid out four conditions that, if met, require the Court to dismiss a plaintiff's claims for lack of subject matter jurisdiction: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state-court judgment"; (3) "the plaintiff must invite district court review and rejection of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005) (alterations and internal quotation marks omitted); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014) (same). "The Second Circuit has classified the first and fourth requirements as 'procedural' and the second and third requirements as 'substantive.'" *Done v. Wells Fargo, N.A.*, No. 12-CV-4296, 2013 WL 3785627, at *6 (E.D.N.Y. July 18, 2013) (citing *Hoblock*, 422 F.3d at 85).

There is no question that the procedural requirements are met here. Plaintiff lost in state court and the state-court foreclosure judgment was entered on March 1, 2016, two months before this Action was commenced. (*See* Sweeney Decl. Ex. G.)

Therefore, if Plaintiff's Amended Complaint merely "complain[s] of injuries" caused by the state-court foreclosure judgment and seeks this Court's "review and rejection of" that judgment, then Plaintiff's claims satisfy the substantive requirements of *Rooker-Feldman* and this Court lacks subject matter jurisdiction over them. *Hoblock*, 422 F.3d at 85 (internal quotation marks omitted); *see also Scott v. Capital One, Nat'l Assocs.*, No. 12-CV-183, 2013 WL 1655992, at *3 (S.D.N.Y. Apr. 17, 2013) (same). The Second Circuit has explained that the requirement that a plaintiff's injuries be caused by the state judgment is the "core requirement" of the *Rooker-Feldman* doctrine. *Hoblock*, 422 F.3d at 87. Accordingly, *Rooker-Feldman* would not prevent Plaintiff from "raising federal claims based on the same facts as a prior state

case . . . so long as . . . [P]laintiff complains of an injury *independent of* an adverse state court decision." *Scott*, 2013 WL 1655992, at *3; *see also McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("What *Exxon Mobil* and *Hoblock* do make clear is that the applicability of the *Rooker-Feldman* doctrine turns not on the *similarity* between a party's state-court and federal-court claims . . . , but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court."). Such an "independent claim" is not barred by *Rooker-Feldman*, even if the claim "denies a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party." *Exxon*, 544 U.S. at 293 (internal quotation marks omitted); *see also Hoblock*, 422 F.3d at 86 ("'[I]ndependent claims' . . . are outside *Rooker-Feldman*'s compass even if they involve the identical subject matter and parties as previous state-court suits.").

This is not the first time that a mortgagor has filed a suit in federal court after a state court issued an adverse foreclosure judgment. Faced with similar suits, "[c]ourts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine." *Webster v. Wells Fargo Bank, N.A.*, No. 08-CV-10145, 2009 WL 5178654, at *5 (S.D.N.Y. Dec. 23, 2009) (internal quotation marks omitted), *aff'd sub nom. Webster v. Penzetta*, 458 F. App'x 23 (2d Cir. 2012); *see also, e.g.*, *Barbato v. U.S. Bank Nat'l Ass'n*, No. 14-CV-2233, 2016 WL 158588, at *3 (S.D.N.Y. Jan. 12, 2016) (same); *Campbell v. Bank of N.Y. Trust Co., N.A.*, No. 11-CV-1588, 2012 WL 2952852, at *7 (S.D.N.Y. May 8, 2012) (same), *adopted by* 2012 WL 2953967 (S.D.N.Y. July 18, 2012); *Murphy v. Riso*, No. 11-CV-873, 2012 WL 94551, at *6 (E.D.N.Y. Jan. 12, 2012) (same). As the Second Circuit has put it, *Rooker-Feldman* precludes a district court from entertaining a suit that "would require the federal court to review the state proceedings and determine that the foreclosure judgment was

issued in error." *Vossbrinck*, 773 F.3d at 427. This is true even if, as here, a plaintiff contends that "the foreclosure judgment was obtained fraudulently." *Id.*; *see also Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 517 (D. Conn. 2015) ("[E]ven if the state court judgment was wrongly procured, it is effective and conclusive until it is modified or reversed in the appropriate State appellate or collateral proceeding." (internal quotation marks omitted)), *aff'd sub nom. Gonzalez v. Deutsche Bank Nat'l Tr. Co.*, 632 F. App'x 32 (2d Cir. 2016). However, "to the extent [Plaintiff's] pro se complaint can be liberally construed as asserting fraud claims . . . seek[ing] damages . . . for injuries [Plaintiff] suffered from [Defendants'] alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment," such claims "are not barred by *Rooker-Feldman*." *Vossbrinck*, 773 F.3d at 427–28 (italics omitted); *see also Gonzalez*, 632 F. App'x at 34 ("To the extent [the] plaintiffs' complaint can be liberally construed to allege injury stemming from the same transaction but not directly caused by the foreclosure judgment, their claims are not barred by *Rooker-Feldman*." (emphasis omitted)).

    The Court holds that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine to the extent that Plaintiff seeks a declaration that he is the owner of the Subject Property. *See Riley v. Comm'r of Fin. of City of N.Y.*, 618 F. App'x 16, 17 (2d Cir. 2015) ("[A]n action seeking a declaration of property ownership after loss of title pursuant to a state-court foreclosure judgment [is] barred by *Rooker-Feldman*."); *Barbato*, 2016 WL 158588, at *3 (finding *Rooker-Feldman* barred claims where "the relief that [the] [p]laintiffs seek—quiet title and return of their property—would require th[e] [c]ourt 'to review the state proceedings and determine that the foreclosure judgment was issued in error'" (quoting *Vossbrinck*, 773 F.3d at 427)); *Quiroz v. U.S Bank Nat'l Ass'n*, No. 10-CV-2485, 2011 WL 2471733, at *6 (E.D.N.Y. May 16, 2011)

("Requesting restoration of title to [the] plaintiffs . . . essentially asks this court to vacate [the state judgment] in clear violation of *Rooker-Feldman*."), *adopted by* 2011 WL 3471497 (E.D.N.Y. Aug. 5, 2011). However, Plaintiff's claims are not barred completely because Plaintiff's Amended Complaint can be construed broadly as asserting fraud claims seeking damages. *See Vossbrinck*, 773 F.3d at 427. For example, Plaintiff alleges that Defendants fraudulently asserted that Plaintiff owed Defendants money even though Plaintiff tendered payment to Defendants. (*See* Am. Compl. ¶¶ 10, 23.) Therefore, those claims are not barred by *Rooker-Feldman*.

In light of this ruling, all of the claims asserted against Justice Brands are dismissed, as Plaintiff's demand for a declaration that Plaintiff is the owner of the Subject Property is barred by *Rooker-Feldman*. *See Riley*, 618 F. App'x at 17 (noting that "an action seeking a declaration of property ownership after loss of title" is barred by *Rooker-Feldman*); *Mohamed v. World Sav. Bank, FSB*, No. 15-CV-5934, 2016 WL 8711440, at *2–3 (E.D.N.Y. Sept. 30, 2016) (holding that the plaintiff's cause of action seeking a declaration that she was entitled to the exclusive possession of the property at issue was barred by *Rooker-Feldman*).[5]

### 3. Collateral Estoppel

Independent of the *Rooker-Feldman* doctrine, Caliber Home argues that Plaintiff's claims related to the foreclosure judgment should be dismissed on collateral estoppel grounds. (*See* Caliber Home Mem. 7.) Collateral estoppel, also known as issue preclusion, "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party." *Tracy v. Freshwater*, 623 F.3d 90, 99 (2d Cir. 2010)

---

[5] The fraud-based claims may not proceed against Justice Brands because those claims are barred by the Eleventh Amendment and the doctrine of judicial immunity.

(internal quotation marks omitted). Collateral estoppel will preclude a court from deciding an issue where "(1) the issue in question was actually and necessarily decided in a prior proceeding, and (2) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the first proceeding." *McKithen*, 481 F.3d at 105 (internal quotation marks omitted); *see also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 425 (S.D.N.Y. 2012) (same). "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided, while the party against whom the doctrine is asserted bears the burden of showing the absence of a full and fair opportunity to litigate in the prior proceeding." *Colon v. Coughlin*, 58 F.3d 865, 869 (2d Cir. 1995); *see also Thomas v. Venditto*, 925 F. Supp. 2d 352, 360 (E.D.N.Y. 2013) (same).

Although not raised by every Moving Defendant, the Court concludes that collateral estoppel bars Plaintiff from asserting that Defendants fraudulently foreclosed on the Subject Property. Plaintiff alleges that Defendants conduct was fraudulent because he satisfied the debt underlying the mortgage. (*See* Am. Compl. ¶ 10.) Justice Brands specifically rejected this argument in the foreclosure action. (*See* Froehlich Decl. Ex. C, at 2 (holding that Plaintiff "failed to set forth any sufficient legal argument or evidence demonstrating full satisfaction of the debt to warrant granting his requested relief").) Therefore, Plaintiff's fraud-based claims are barred by collateral estoppel. *See Book v. Mortg. Elec. Registration Sys.*, 608 F. Supp. 2d 277, 287–88 (D. Conn. 2009) ("Because [the plaintiff's] claims rely on issues that have been fully and fairly litigated, actually decided, necessary to the judgment, and identical to the issues decided

during the pendency of the mortgage foreclosure suit, collateral estoppel bars him from pursuing those claims in this court.").[6]

### 4.  Plaintiff's Other Claims

Plaintiff invokes several state and federal statutes throughout the Amended Complaint, but has not stated a claim under any of these statutes, mostly because he has not alleged any facts in support of his claims.

#### a.  RICO

"A private cause of action under RICO requires that the plaintiff allege: '(1) the defendant's violation of 18 U.S.C. § 1962, (2) an injury to the plaintiff's business or property, and (3) causation of the injury by the defendant's violation.'" *Fertitta v. Knoedler Gallery, LLC*, No. 14-CV-2259, 2015 WL 374968, at *5 (S.D.N.Y. Jan. 29, 2015) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283 (2d Cir. 2006)).  Turning to the first requirement, to establish a defendant's violation of 18 U.S.C. § 1962, a plaintiff must allege "the existence of seven constituent elements: (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983); *see also Aronov v. Mersini*, No. 14-CV-7998, 2015 WL 1780164, at *3 (S.D.N.Y. Apr. 20, 2015) (same).  With regard to the racketeering activity requirement, the statute provides a list of

---

[6] The Court need not discuss Klein's and Cohn & Roth's argument that Plaintiff's claims are barred by res judicata in much detail.  "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007) (italics, alteration, and internal quotation marks omitted).  Neither Klein nor Cohn & Roth was a party to the state-court foreclosure action, and therefore have no basis upon which to assert that Plaintiff's claims are barred by res judicata.

criminal acts that can constitute predicate acts of racketeering. *See* 18 U.S.C. § 1961(1) (defining "racketeering activity"). Mail fraud, under 18 U.S.C. § 1341, and wire fraud, under 18 U.S.C. § 1343, qualify as predicate acts of racketeering activity. *See id.* "The essential elements of a mail or wire fraud violation are (1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme." *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted).

"[A]ll allegations of fraudulent predicate acts[] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). This includes allegations of predicate acts of mail and wire fraud. *See Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184–85 (2d Cir. 2008) (holding that the plaintiffs' mail and wire fraud allegations were not "pled with the requisite particularity" under Rule 9(b)). In general, "[p]laintiffs must plead . . . mail [or wire] fraud with particularity, and establish that the [communications] were in furtherance of a fraudulent scheme." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013).

Plaintiff has failed to state a RICO claim because he has not pleaded the predicate acts of mail and wire fraud with anything close to the requisite particularity. For example, Plaintiff has not identified any false statements or communications in the Amended Complaint. He alleges only that the documents filed in the state-court action were fraudulent, without explaining why the filings were fraudulent. (*See* Am. Compl. ¶ 20.) This by itself justifies dismissal of the RICO claims. *See Curtis & Assocs., P.C. v. Law Offices of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 177 (E.D.N.Y. 2010) ("Here, [the] plaintiffs' bare allegations that [the] defendants mailed various litigation-related documents on or about certain specified dates plainly fall short

of these heightened pleading requirements. The allegations both fail to identify any allegedly fraudulent or misleading statements by [the] defendants or to adequately plead the existence of an overall scheme to defraud."). Moreover, it is likely that Plaintiff's allegations of fraud are, as discussed above, barred by the doctrine of collateral estoppel. Accordingly, Plaintiff's RICO claim is dismissed.

### b. Sections 1982, 1985 & 1986

Plaintiff alleges that Defendants violated 42 U.S.C. §§ 1982, 1985 and 1986 during the course of the foreclosure proceedings.

To state a claim under § 1982, a "plaintiff must allege facts in support of the following elements: (1) he is a member of a racial minority; (2) [the] defendant's intent to discriminate on the basis of his race[; and] (3) the discrimination concerned one or more of the activities enumerated in . . . [§] 1982." *Puglisi v. Underhill Park Taxpayer Ass'n*, 947 F. Supp. 673, 700 (S.D.N.Y. 1996) (alterations omitted), *aff'd*, 125 F.3d 844 (2d Cir. 1997). Section 1982 concerns the lease and sale of real and personal property. *See* 42 U.S.C. § 1982.

"A plaintiff claiming violation of § 1985(3) must prove (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 98-CV-2416, 2002 WL 13222, at *3 (E.D.N.Y. 2002). "Furthermore, the conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Mian v. Donaldson, Luftkin & Jenrette*

*Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (internal quotation marks omitted); *see also Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (same).

Section 1986 "provides a cause of action against anyone who having knowledge that any of the wrongs conspired to be done and mentioned in [§] 1985 are about to be committed and having power to prevent or aid, neglects to do so." *Mian*, 7 F.3d at 1088 (internal quotation marks omitted). "Thus, a § 1986 claim must be predicated upon a valid § 1985 claim." *Id.*

All of these claims require Plaintiff to allege that he was discriminated against on the basis of race or some other class-based animus. Plaintiff does not mention his race in the Amended Complaint, but the Court can infer that Plaintiff is African-American. (*See* Pl.'s Mem. of Law in Opp'n to Caliber Home's Mot. To Dismiss ¶ 7 (Dkt. No. 51) (arguing that the laws cited in the Amended Complaint are applicable to African-Americans).) Plaintiff has not, however, alleged a connection between his race and Defendants' conduct. *See Armstrong*, 2002 WL 13222, at *3 ("[T]he mere assertion of racial motivation is not sufficient to state a claim under § 1985."). Nothing in the Amended Complaint or Plaintiff's opposition papers suggests that Defendants sought to foreclose on Plaintiff's home because of Plaintiff's race. Accordingly, Plaintiff's §§ 1983, 1985, and 1986 claims are dismissed.

### c. New York General Business Law § 349

New York General Business Law § 349 proscribes "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]," N.Y. Gen. Bus. Law § 349(a), and, further, provides a private right of action to "any person who has been injured by reason of any violation of this section," *id.* § 349(h). To state a claim under § 349 a plaintiff must show: "(1) acts or practices that are 'consumer oriented,' (2) that such acts or practices are deceptive or misleading in a material way[,] and (3) that [the] plaintiff has been

injured by reason of those acts." *DePasquale v. Allstate Ins. Co.*, 179 F. Supp. 2d 51, 58 (E.D.N.Y. 2002), *aff'd*, 50 F. App'x 475 (2d Cir. 2002). Plaintiff cannot state a claim under § 349 because he has not alleged that Defendants' conduct was consumer oriented. Instead, what Plaintiff alleges amounts to a single home loan dispute unique to the Parties. *See id.* ("The consumer oriented prong of the [§] 349 claim requires a plaintiff to show that the practices complained of have a broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute." (alteration and internal quotation marks omitted)). Accordingly, Plaintiff's § 349 claim is dismissed.

### 5. Improper Service of Process

Defendants Caliber Home, Klein, and Cohn & Roth argue that Plaintiff's claims must be dismissed because Plaintiff has not properly served these Defendants with service of process. (*See* Caliber Home Mem. 4–5; Klein and Cohn & Roth Mem. 9.)

With respect to service of process on Caliber Home, a plaintiff may serve a summons and complaint upon a corporate defendant in one of two ways authorized by the Federal Rules of Civil Procedure: (1) under Federal Rule of Civil Procedure 4(h)(1)(B), "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant"; or (2) by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made," Fed. R. Civ. P. 4(e)(1). New York law, the state in which this Court is located, provides that "personal service upon a corporation . . . shall be made by delivering the summons . . . upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or

assistant cashier or to any other agent authorized by appointment or by law to receive service."

N.Y. C.P.L.R. § 311(a)(1). As an alternative to this method, Plaintiff could have served Caliber

Home "by first class mail" pursuant to N.Y. C.P.L.R. § 312-a, "but only if [the summons and

complaint is] accompanied by two copies of a statement of service by mail and acknowledgment

of receipt (in a specified form), with a return envelope, postage prepaid, addressed to the

sender." *Gold Medal Produce Inc. v. Ricosu Tropical Prods., Inc.*, No. 09-CV-9858, 2010 WL

2267728, at *1 (S.D.N.Y. May 28, 2010).[7]  Plaintiff attempted to serve Caliber Home by sending

a summons and the Complaint via certified mail to Caliber Home's corporate office in Texas,

(*see* Dkt. No. 6), but Plaintiff has not proved compliance with § 312-a's procedural requirements.

Therefore, the Court concludes that Plaintiff has not served Caliber Home in compliance with

New York law. Caliber Home, however, has not briefed whether service was effected pursuant

to Texas law, the state in which "service [was] made." Fed. R. Civ. P. 4(e)(1). Because Caliber

Home did not brief whether Plaintiff properly served it under Texas law, the Court declines to

dismiss Plaintiff's Amended Complaint based on Plaintiff's purported failure to properly

effectuate service on Caliber Home.[8]

---

[7] Service under this method is effective only if the defendant completes the acknowledgment of receipt form and returns it to the sender. *See* N.Y. C.P.L.R. § 312-a(b)(1) ("The defendant, an authorized employee of the defendant, defendant's attorney or an employee of the attorney must complete the acknowledgement of receipt and mail or deliver one copy of it within thirty (30) days from the date of receipt. Service is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender. The signed acknowledgement of receipt shall constitute proof of service.").

[8] The Court recognizes that "the burden to show that service was adequate rests with the plaintiff," *C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005), but Plaintiff is proceeding pro se and Caliber Home has not addressed the service of process issue with the appropriate level of detail. If Plaintiff submits an amended pleading, Caliber Home may reassert this defense so long as it briefs the issue in full.

With respect to service of process on Klein and Cohn & Roth, as with Caliber Home, Plaintiff attempted service via certified mail, (*see* Dkt. No. 8), but there is no indication that Plaintiff complied with § 312-a's other requirements, such as by including a return envelope. As it is Plaintiff's burden to prove that he properly served Klein and Cohn & Roth, *see C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005), and as Plaintiff has not submitted any information or documentation supporting the fact that he complied with § 312-a, the Court holds that Plaintiff did not properly serve Klein or Cohn & Roth. Moreover, Plaintiff mailed only one copy of the summons and Complaint to these Defendants, (*see* Dkt. No. 8), so only one of them could have been properly served even if Plaintiff complied with all of the other requirements. Accordingly, Plaintiff's claims against Klein and Cohn & Roth are dismissed for failure to properly effectuate service of process.[9]

### III. Conclusion

For the foregoing reasons, Moving Defendants' Motions are granted. The claims asserted against the State Defendants are dismissed with prejudice, as the claims asserted against the New York State Unified Court System are barred by the Eleventh Amendment, and the claims asserted against Justice Brands are barred by the Eleventh Amendment, judicial immunity, and *Rooker-Feldman*. The claims asserted against Caliber Home, Klein, and Cohn & Roth are dismissed without prejudice. Plaintiff is given 30 days from the date of this Opinion & Order to file an amended pleading curing the deficiencies identified above. Failure to file an amended

---

[9] Defendants Schroeder and Spangler have not appeared in this Action. Although Plaintiff filed a proof of service with respect to Schroeder, (*see* Dkt. No. 15), it is deficient for the same reasons described above—Plaintiff mailed a summons to Schroeder but did not comply with any of the other procedural requirements. Furthermore, while it appears Plaintiff attempted to file a proof of service with respect to Spangler, (*see* Dkt. No. 7), that document pertains only to Klein & Cohn & Roth. Thus, there is no proof that Spangler was ever served.

pleading within 30 days will result in the dismissal of this Action with prejudice. Within 60 days

of filing an amended pleading, Plaintiff must effectuate service upon Caliber Home, Klein, Cohn

& Roth, Spangler, and Schroeder, or Plaintiff risks the dismissal of this Action.

The Clerk of Court is respectfully directed to terminate the pending Motions, (Dkt. Nos.

36, 41, 45), dismiss the New York State Unified Court System and Justice Brands from the case,

and mail a copy of this Opinion & Order to Plaintiff.

SO ORDERED.

DATED:     July 2 8, 2017
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE